Hello my Mum!    And thanks for watching! You helped me by watching my Bertie Spagat videos how I learned her story, community spirit and many other unique stories. Thank you, and Debianxiao. I will reap my reward. Cheers to everyone! Okay, the next argued case is number 16, 1267. GTNexus Incorporated against Intra Incorporated. Mr. Lyons. Good morning, Your Honor. The patents that were found indefinite, or I'm sorry, found ineligible in this case, are the bedrocks on which Intra has built the world's largest shipping portal. One out of every four container shipments is booked on their portal. Over the first half of this year, more than 18 million bookings were made. In a single year, 180 million status messages are provided. What you're telling us is that the claim is economically important, but you're not telling us yet why it's not abstract. Well, the question, let's start with Alice, step one. And the reason it's not abstract, Your Honor, is that it solves a technical problem. And that's why it's been so successful in the marketplace, and that's why it's changed the industry. In this case, the district court expressly adopted and applied the wrong standard. She applied the EnFISH district court standard for identifying what the claims are directed to, which she described, she quotes from that case. This is a judgment on pleadings. This doesn't really make a difference exactly what the district court said, right? Well, this is a de novo review, Your Honor. So yeah, the key here is where the district court ended up. And where she ended up was finding the claims directed to a concept, just a general purpose, of intermediated booking and tracing of shipping containers. And what that formulation ignored was the problem that's solved, what the patent identifies as the specific problem that was the subject of the patent. And if you look at the arguments that were presented here, GT Nexus maintains, this is just booking and tracking containers. People were doing it manually. The invention is doing it on the internet. But if you look at the patent, it says that's the problem. The patent, if you look in column one, it talks about how the carriers were already doing intermediated booking and tracking through online portals. And they were doing it using incompatible systems. And you had a computer network problem where these incompatible systems didn't function with one another. And so shippers were confronted with a situation where they had to try to interface with incompatible networks. This is a networking case. That was the problem, as the patent refers to this in column one. Why isn't the abstract idea of making the systems compatible within the first step of vows? Well, the idea of, it's much like the case, the situation in Enfish, where the district court said, this is just data storage and retrieval, and that's generic by any measure. Here, when you look at the claims as a whole, and you start looking at the elements, you see there are novel elements built into the claims, this pre-building, where the data was collected in advance of any request for the data so that it could be translated into a common neutral format in a centralized database. That's built into the claims, and that's a technical solution to a network problem, which is very different from simply saying, oh, people were doing this manually, and it would be better to do it on the internet. This is a technical problem. And that aspect, this pre-building concept, is exactly what the patent office said it was allowing the claims for. This patent has been subject to nine, the four patents have been subject to nine separate post-grant patent-off challenges. Five of them went to the end on the merits, and the patent office confirmed that this was a novel technical advance. It didn't decide the 101 issue, right? No, the 101 issue was not decided there. They did not do it, but they found that this was a novel technical solution to this, and much like ENFISH, where it solved a computer problem by coming up with a data tabulation system that solved a computer problem, this solved the incompatible carrier networking problem. It fixed a problem that the technology was not able to solve. And what's interesting, I think, and unique about this case, much different than the other cases that have been before this court on this issue, is there is a large, well-developed body of evidence that the ideas here were not abstract. They were solutions to computer problems. You've got expert testimony, not only from Intra's expert, but confirming testimony from GTNexus's expert. You've got evidence from the prior art that was considered, and all of it points in the same direction. So whether you look at this as a step one analysis, which I think makes sense here, because it's very much like McGrow, it's very much like ENFISH, where you're solving a computer problem, this incompatibility problem, with a technological solution. So I don't think you get to step two in this case because of that. But if you do accept the district court's evaluation that this is directed to an abstract idea, when you get to step two and you're looking at the individual elements and you're looking at them as an ordered combination, what you find is that this is anything but routine or conventional. Let's look at what the actual technical evidence said. This is the evidence which, by the way, the court, with a wave of her hand, completely discarded. She simply announced that the legal issues presented lends itself to resolution without resort to extrinsic evidence. So she announced, I will not look at any of the evidence that bears on the question of whether it truly is conventional, ordinary practice. Now what the undisputed evidence said was that there was no such shared multi-carrier platform in existence. No one had managed to build this thing that was supposedly routine and conventional. There's no doubt that it was novel, given the number of times the patent office has now looked at it that they've identified the specific technical features. The novelty and 101 aren't the same thing, are they? No, they're not the same thing, but I think they do inform each other to some extent. What's also undisputed in this case, which is very unusual, is that those in the field believed that the technical solution here, pre-building a database with incompatible character data, was not workable. Intra's expert testified to that. The industry believed that in order for a shared system to even work, each individual system had to communicate using the same message format. The prior art that was examined during the patent office acknowledged that. In order to make EDI, that's electronic data interchange, work, all parties had to use a shared format. And GTNexus's expert concurred when asked, would you agree that in the late 90s, that's the time when this invention was being developed. As this reference said, and she read to her, was this reference in Guidus, which I just quoted, about how for EDI to even work, you all have to use the same format. She agreed, yeah. Then she went through and was asked, well, are there advantages to doing it not the way the prior art did it, but the way, the technical solution that was the focus of the patents, where you pre-build the database, you collect the information before it's requested, you translate it. She said, yes, this is GTNexus's expert, said, yes, the data would be more accessible, fewer steps are required to obtain the information, more fault tolerant. And in her words, she said it would be, quote, better than a system where the data had not been pre-gathered in this way. So my suggestion to this court is when you have something that's a novel, one-of-a-kind, first-of-its-kind solution to a technical problem, this incompatible network problem, it operates in a way that was believed, everybody agrees, was believed wouldn't work, couldn't work, but they did it anyway, and it allowed them to realize all these advantages over the existing system. That's not routine. That's not conventional. And the court only got to its conclusion otherwise by explicitly saying she would not consider any of the evidence that demonstrated her conclusion was wrong. And what was the basis for her conclusion? She just announces in the decision, without any real explanation, that pre-storing status information constitutes pre-solution activity incidental to the performance of the abstract idea. She said it amounts to nothing more than conventional data storage, which is not even arguably inventive. But as all the evidence showed, this was inventive. This was not conventional. This is not how any of the systems were working. They weren't pre-building. This was the antithesis of what you would think you would do. If somebody wants data, you'd wait for a request, you'd go out to the carrier networks to collect that information, and they turned that routine and ordinary process on its head. Said, no, we're going to collect everything in advance so that we can translate it and organize the data. With regard to translation, she similarly dismissed that without any real explanation, simply saying, claims do not disclose a novel translation method, however, and thus contemplate routine computer functions. This is much like the Bascom case. In Bascom, the court recognized that the internet filtering technology that was the subject of the patent was well known, but the invention there deployed that technology in a unique way to solve a problem where they took that and, as the court said, filtering content on the internet was already a known concept, just like translating is here, but in that case, the patent describes how its particular arrangements of elements is a technical improvement over the prior art. That's just like in the Intra case, and the court further noted in Bascom that the claims carve out a specific location for the filtering system, a remote ISP server, and require the filtering system to give users the ability to customize filtering. That's very much like the facts here, where the patent identifies a specific location to gather the data, a specific timing for gathering the data, for using the translation technology. All of that comes together and coalesces as the inventive concept here in this case, and it solves a problem that isn't a commercial problem. It's not a commercial problem to say that all of the carriers have developed incompatible systems and are creating irreconcilable systems. That wasn't a problem that existed until the carriers took their systems online. And I'll reserve the rest of my time, Your Honor, unless there's some further questions. Thank you. We'll hear from the other side. Mr. Feldman. May it please the court. It's a pleasure to be here. It was hard to get a hotel room. The IMF is in town. And I want to thank the panel and the court for not issuing any more 101 decisions yesterday that I had to stay up late reading. There have been enough since Labor Day that we can talk about. What I wanted to do with the court's permission is address three things. First, I wanted to look at clear the procedural underbrush. Counsel mentioned the judge waving her hand and discovery and everything. I want to talk about that for a minute. Then I want to pick what I think is the precedent of this court that is the most relevant here because there are a lot to pick from. And then I'd like to take a quick review of your post-Labor Day jurisprudence, including the Affinity Twins last week. Well, that's a good agenda. And we'd like to know all of this. But would you also comment on your friend's view that the inventive concept here is not in any particular step but in the combination of putting them all together? Yes. As Judge Dyke pointed out, this is de novo review, but I think that the district court addressed that by reviewing the patents both claim by claim and in their totality. This was not one of those cases where the judge came up with a caricature of the invention. Here we went claim by claim as well as in the totality. If I heard him correctly, and I'm trying to be fair, the invention, the big change here that he talked about, was EDI. I call it the Tower of Babel problem. The different shippers, EDI is well known. You've decided many electronic data interchange patents. And what Intra says, both in their papers, and I think primarily the argument was, what we did, we weren't just using a computer and a server and a network, but we were able to translate these different languages into one. To me, that's the heart of the appeal. So if the court looks at the specifications, there are three specifications, not claims. I'll get to claims in a minute. There are three specifications that address that. The first is at Appendix 15740, at 4 lines 61 to 63. And what the patent says is, quote, Server 108 processes EDI messages by validating the data when called by Server 107, and translating the data into the common carrier system layout format. That's it. The other two specifications are similar. A15741 at 6 lines 7 to 9, quote, Alternatively, the common carrier system 103 may translate the user's request from one form or format into one understood by the carrier or carriers 103, close quote. And the last specification is at A15745 at 13 lines 8 to 10, quote, EDI translator translates carrier event codes and message formats into a common carrier system neutral format, close quote. So that's sort of in line with what counsel said, that the invention here wasn't intermediated booking and tracing a freight. It was translating the common languages. But as you see from their spec... He said that it was in the combination of all of these steps. And he tells us that there is no reference, no prior art, which combines all of the steps which they have combined. We haven't really gotten to the question of, we were looking under Section 101 for an inventive concept. Yes, we are, Your Honor. The court didn't get to the question of whether it also met the requirements of the other requirements of patentability. So I think it would be helpful to respond to that particular issue. Yes, Your Honor. So the specifications don't tell you how to do it. Perhaps the claims do. There are four claims in suit, but, I'm sorry, four patents in suit. But among those four patents, which have a lot of claims, there are three dependent claims that are on point, which should have what Your Honor is looking for. That translation component. It's not enough to say you should translate. As Alice said, you can't just say put it on the internet and do it. You have to specify how that function will work. But you're not saying that the code needs to be included as to how it works. No, of course not. But if you look at Appendix 15678 to 79, there are three dependent claims. These are all from the 387 patent. The other patents don't even mention doing the EDI, the translation. Those claims recite, quote, wherein storing, container tracking, and tracing information further comprises translating the received container tracking and tracing information into a common carrier system neutral format, close quote. Under any reading of Alice Step 2, in all of this court's precedents, that isn't enough. This is not a difficult line drawing case. It's not one of the cases like Bascom or Macro or Enfish where you're changing something about how computers work. Here, they specify function. They say you need to translate different EDI, the Tower of Babel, back into one common language. But they don't suggest any function beyond the abstract. And that's why, whether you look at the claims collectively or individually, they don't cut it. If I've addressed Your Honor's question, let me turn to the procedural underbrush. There's a lot of reference about discovery. There was no claim construction sought below. There was no request for any discovery below. The appellant did submit an expert declaration. We didn't. And as you know, this is one of those rare circuit of location issues. In the case arose, the decision not to include evidence in a motion for judgment on the pleadings is a matter of discretion. I think it's what counsel referred to. She waved her hand. I think it's a little more elegant to say she exercised her judicial discretion. What the court said at A4,  presented, I'm sorry, the legal issue presented, lends itself to resolution without resort to extrinsic evidence. The court exercises its discretion to exclude matters outside the pleadings and treat the motion as one brought under Rule 12C. That's proper under Ninth Circuit law, but even better yet, it's proper under your law. The mortgage grader decision at pages 1325 to 26 in counsel's words waved away the expert declarations on both sides and said, this is a legal issue. We don't need some guys opining on the legal issue. Better yet, last week in the Affinity Twins, this court explicitly upheld the district court's decision to disregard expert declarations regarding the innovative nature of the patents and conducting 101 analysis. That was in Direct TV and Star 7 and the Amazon Star 3. Let me go with my greatest hit. There are so many decisions to pick from. I think Electric Power Group against Alston, which the court decided on August 1, is the closest, and I don't know if any of the judges on this panel were on it. I did this before I knew who the panel was, so I'm not shopping. The representative patent claim there was Claim 12 of the 710 patent, and it described a network comprised of many different entities sending different kinds of information indecipherable by humans. The information is interpreted, stored, synthesized, analyzed, then displayed. The key feature of those patents was the ability to turn information of different types and from many different sources into a humanly comprehensible amount of information. With respect to Alice Step 1, this court in Electric Power Group said this is just a combination of abstract idea processes. All of these cases are turned on their specific facts. They're analyzed on their facts. Whether there is an abstract idea under Alice Step 1, whether there's an inventive concept under Step 2 is highly fact-specific, and I still would appreciate some guidance on the particular point as to why the combination of steps does not meet the criteria of Alice Step 2. Yes, it is true as Justice Stewart said that the court knows it when it sees it, but that does not mean respectfully, Your Honor, that this court can issue different decisions every day depending who the panel is, and that it's just fact-specific. We don't have exactly identical facts. If we had, this wouldn't have gotten through the Patent Office to start with. The Patent Office, Your Honor, I'm sorry, I didn't mean to interrupt you. The Patent Office in the covered business review here rejected all four patents. They granted the patent. They granted the patent pre- Alice. In post- Alice, they rejected, they initiated proceedings to reject all four, but that was wiped out. That's not evidence before you. But when you're on... Judge Newman was asking about combination of methods. Is it your view that a combination of abstract steps is still abstract? Yes, Your Honor. Yes, Your Honor. As the court said in Electric Power Group in Step 2, Step 2, it found, quote, that nothing in the claims understood in light of the specification requires anything other than off-the-shelf conventional computer network and display technology for gathering, sending, and presenting the desired information. Close quote. That's at Star 5. Your court then said, quote, the result-focused functional character of claim language has been a frequent feature of claims held ineligible under Section 101, especially in the area of using generic computer network technology to carry out economic transactions. Except that not all of the steps here were previously performed, perhaps because the technology didn't exist in the past and the evolution of programming skills and of the other steps which have allowed and facilitated and really taken us to the Alice situation in such a variety of cases. So we need to understand how and why in this particular case it fails the Alice test. There's no one I would less like to agree with than Judge Newman, but I must respectfully disagree with what you just said. Every step here collectively and individually was known. Things like pre... But they weren't combined, and there wasn't, until now, technology with the capability of combining them. And one of the concerns for all of these cases is where, in fact, is the inventive step when the technology proceeds because of other advances in science. I think, Your Honor, it sounds like you didn't like the Alice decision. Because the items in Alice hadn't been combined either. And the Supreme Court said, just combining all this on the internet doesn't do it. Absolutely you would be right if they had invented and claimed and specified the Rosetta Stone. A new way of translating different EDI from diverse sources into one language. The Ur language. The language in the Garden of Eden before the expulsion. But the reason I began by showing you the three specifications in the three claims is they do nothing of the kind. So Your Honor's observation would be highly valid where there was an invention as to one of those. But smushing them all together fails Alice. And it fails this Court's decisions. Not just in electric power but last week alone. Two affinity labs in intellectual ventures against Symantec were very comparable to this case. So although I don't think I'm capable of coming up with a golden rule for independently even this Court has sometimes struggled with it. But if one wanted to approach it, it might be that where you invent something new in how the computers work that may be enough. But here we're not even close to that. The three specifications in the three claims say let's take these different pieces and translate them. But they don't tell you how to do that. Thank you Your Honor. Okay. Thank you Mr. Feldman. Mr. Lyons. Thank you Your Honor. The technical problem confronting the industry was a massive amount of data with millions of containers moving. So you have the idea of a neutral language but where is it that you say how to do it? It's just an idea of doing it. It doesn't tell you how to do it. Right. The invention here isn't just the idea of translation. It's the idea of That would be abstract. Do you agree? If it was just translate yes, that would be abstract. I agree. The idea here is how you construct your network. As I said everyone agreed. Their expert agreed. It was believed that you couldn't build a single network. That's what's described here where you're pulling in the incompatible data from all the sources. The question is not whether you could do it. The question is whether this patent tells you how to do it. Other than telling you to use conventional computer components. The patent is very specific. Much like the case in Bascom where the patent told you take a conventional internet filter. Just like take a conventional translation mechanism. And here's where I want you to put it in your network. In the Bascom case they said I want you to put it at the ISP not on the computers for the individual users because that's a much more difficult way to administer it. And I want you to make it configurable for each of the users and by arranging it in that way they solved a problem in the technological arts. The same here was when you took this translation capability you combine it with this idea that no, we're going to actually pre-request. I noticed council talked about translation but did not talk about the idea that was the focus in the patent office and they said it was novel. Was this idea pre-building. And while through hindsight that might seem like something that was just an abstract idea. Here people specifically believed at the time that that was technically not feasible. The patent taught you could and should do it. And you should collect this data in advance and the translation was a part of that that it realized by putting it like that filter in Bascom, by putting it in a central location, by being this hub where if the hub could communicate with everyone, the fact that the users of the system couldn't communicate with each other didn't matter. And that was really the technological innovation that overcame the problem and this had, I started the discussion by talking about this is a real world case because this did change how the markets function. This did change the technology that was being deployed in the shipping industry because before this patent people didn't know how to do this. Once this patent laid out a methodology for structuring the network, it didn't create every building block. It didn't invent filtering like in Bascom. It didn't invent translation but it did describe a technological solution which was in organizing the network in a certain way and deploying the technology in an appropriate way to solve a technological problem which was these incompatible networks. And I think this is what just like in other cases like Enfish where they said look this is a computer problem, this is a solution to a computer problem. That's what the patent system is for. We want to encourage innovation in solving those technical problems. The fact that it's deployed in a context that has commercial ramifications shouldn't inhibit the ability to get patents. It should encourage it further. Thank you, your honors. Thank you. Thank you both. The case is taken under submission.